**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| GREGORY LUKASIK | : | No. 14 MAP 2025 |
| | : | |
| | : | Appeal from the Order of the |
| v. | : | Superior Court at No. 885 MDA |
| | : | 2023, entered on April 16, 2024, |
| | : | reversing and remanding the |
| SARAH A. SCOTCHLAS | : | Order of the Lackawanna County |
| | : | Court of Common Pleas, Civil |
| | : | Division, at No. 2021-40676, |
| APPEAL OF: RYAN P. CAMPBELL, | : | entered on May 5, 2023 |
| INDIVIDUALLY AND ON BEHALF OF | : | |
| ROTHENBERG & CAMPBELL | : | ARGUED:  March 11, 2026 |

**OPINION**

**JUSTICE DONOHUE**                                    **DECIDED:  July 21, 2026**

The Superior Court held Appellant, Ryan P. Campbell, Esq. ("Campbell"), and his law firm, Rothenberg & Campbell,[1] jointly and severally liable for $19,072.40 in counsel fees awarded by the trial court against Campbell's former client, Sarah Scotchlas ("Mother").  The counsel fees were awarded to Gregory Lukasik ("Father"), and Appellee Brenda M. Kobal, Esq., ("Kobal"), the guardian ad litem ("GAL") previously assigned in Mother and Father's custody case involving their mutual child ("Child").  We granted review to determine whether the Superior Court erred in applying *County of Fulton v. Secretary of Commonwealth*, 292 A.3d 974 (Pa. 2023), to hold that the trial court abused its discretion by failing to hold Campbell jointly and severally liable for the counsel fees

---

[1]  Appellant Campbell is before this Court representing both himself and his law firm, Rothenberg & Campbell.  Unless otherwise provided, all references to Campbell are intended to include his law firm.

awarded to Kobal.[2] After careful review, we reverse the Superior Court's decision as to counsel fees awarded to Kobal to be paid by Campbell. We hold that *County of Fulton* does not support the Superior Court's determination that the trial court abused its discretion by failing to hold Campbell jointly and severally liable for Kobal's counsel fees.

## Background

Several weeks after Child was born in May 2021, Mother filed a complaint in the Lackawanna County Court of Common Pleas seeking to establish Father's paternity. *See* Trial Court Opinion, 5/5/2023, at 1. After some initial resistance, Father eventually accepted paternity and then filed a petition for custody in August 2021. *Id*. Two months later, after the parties appeared for a conciliation conference before a custody master, the trial court appointed Kobal as GAL by agreement of the parties and granted limited visitation rights to Father on a temporary basis as the custody litigation proceeded. *Id*.

Kobal quickly became concerned with Child's safety, which prompted Father to file an emergency petition for special relief on November 5, 2021. *Id*. That same day, the trial court issued an emergency order granting Father temporary sole legal and physical custody of Child. *Id*. On November 22, 2021, the court entered an order granting Mother periods of professional supervised custody and directing the parties to submit to a comprehensive psychological evaluation. *Id.* at 1-2. That order prohibited distribution of the psychological evaluations to clients or third parties without prior court approval. *Id*. at 2 (quoting Order, 11/22/2021 ("Psychological Evaluation Order")). A hearing on Father's petition for special relief was repeatedly continued through the following year. *Id*. In the meantime, Father filed an amended custody complaint on March 29, 2023, and Mother

---

[2] Campbell did not seek our review of the Superior Court's decision insofar as it applied to the award of counsel fees to Father. *See* Clarification Letter, 5/23/2024, at 1 ("[P]lease allow this correspondence to serve as a confirmation of the oral representations made to your office that the appropriate and correct docket number from which petitioner seeks appellate review is 885—MDA—2023 and does not include 884—MDA—2023.").

filed two petitions for special relief on April 1, 2022, seeking to regain custody. *Id*. After a status conference on April 7, 2022, the court permitted Mother supervised physical custody for two hours, twice per week. *Id*. However, on May 4, 2022, upon Father's motion, the court issued an order suspending Mother's periods of supervised custody. *Id*.

On May 11, 2022, through her third attorney in this matter, James T. Mulligan, Jr., Esq., Mother filed a petition to remove Kobal as GAL. Defendant's Petition to Remove Guardian Ad Litem, 5/11/2022 ("First Removal Petition"). Mother alleged that Kobal was biased against her and engaged in various forms of misconduct. *Id*. at 4 (unnumbered paragraph).[3] Kobal testified at a hearing on the First Removal Petition and generally denied the accusation of bias, stating that she supported Father's obtaining temporary sole legal and physical custody of Child until a full inquiry could be conducted regarding Child's safety. N.T., 6/13/2022, at 20. Kobal indicated that she "could not ascertain the safety and well-being" of Child while in Mother's care due to Mother's lack of cooperation. *Id*. She stated that when an "individual is cooperating[,]" she was "better able to ascertain the safety and well-being of the child." *Id*. at 51. Kobal maintained that contrary to being biased against Mother, she had bent over backwards to encourage her cooperation. *Id*. at 94-97 (describing various attempts to facilitate Mother's cooperation). Kobal stated that it was her intention to have Mother see Child and that any frustrations Mother had with the court process or the appointment of a GAL should have been discussed with Mother's therapist. *Id*. at 100.

---

[3] Mother alleged that Kobal had rushed to judgment with her concerns regarding Child's safety without first conferring with Child's pediatrician and/or other medical professionals. First Removal Petition, ¶¶ 5(a)-(g). She also complained that Kobal had reported concerns about Mother's mental health and potential drug use or that she had encouraged Father to do so based on minimal investigation. *Id*. ¶¶ 5(h)-(i). Mother asserted Kobal's speculations demonstrated a bias against Mother that directly led to her loss of custody of Child despite an absence of evidence showing that Child's safety or health were at risk. *Id*. ¶¶ 9-18. She also alleged that Kobal had exceeded her authority by suspending supervised visits that had been approved by the court. *Id*. ¶¶ 19-20.

Mother also testified at the hearing on the First Removal Petition. She complained that she had never agreed to have a GAL appointed. *Id*. at 113.[4] She stated that Kobal had "threatened" to transfer custody of Child to Father if she did not come to be interviewed at a very specific time on November 3, 2021. *Id*. at 114. Mother also maintained that Kobal made several unsubstantiated accusations about Child's safety and Mother's mental health that led to her loss of custody. *Id*. at 115-17. Mother stated that she did not trust Kobal and doubted her ability to be fair and impartial. *Id*. at 122-23.

Kobal moved to dismiss the First Removal Petition because Mother "failed to prove that there was any bias exhibited" by Kobal. *Id*. at 138. Mother argued that Kobal exhibited bias by rushing to judgment regarding whether Mother had endangered Child and had failed to conduct a sufficient investigation before recommending Child's removal from Mother's custody. *Id*. at 140-41. Kobal countered that her client had testified credibly and that no evidence was presented that Kobal "did anything differently in this case" that demonstrated a bias toward Mother. *Id*. at 142. Kobal maintained that Mother was seeking to remove her merely because Mother did not like the results of the court's orders or the consequences of her failure to cooperate. *Id*. at 143. Ultimately, the trial court denied the First Removal Petition. Order, 6/15/2022, ¶ 1.

A custody hearing began immediately after the hearing on the First Removal Petition but could not be completed and was continued until September 29, 2022.[5] Mother appeared pro se at the September 2022 hearing but refused to take the stand. Trial Court Opinion, 5/5/2023, at 4. Consequently, the court again temporarily granted Father full physical and legal custody and suspended Mother's supervised visitation. *Id*.

---

[4] Mother later admitted that her prior attorney had not only agreed to have a GAL appointed but had specifically requested Kobal's appointment. N.T., 6/13/2022, at 128.

[5] As of the September 29, 2022 hearing, all of the parties' custody petitions, including the emergency and amended custody petitions, had been consolidated for resolution.

The trial court's docket reflects that nothing further transpired until January 26, 2023, when Campbell entered his appearance as Mother's fourth attorney in less than twenty months. Five days later, Campbell filed on Mother's behalf a second petition to remove Kobal. Defendant's Petition to Remove Guardian Ad Litem, 1/31/2023 ("Second Removal Petition"); *see also* Amended Second Removal Petition, 4/14/2023.

The Second Removal Petition was voluminous, setting forth 262 individual paragraphs over 55 pages with 391 pages of attached exhibits. Mother provided a lengthy recitation of the prior history in the case, asserted claims of misconduct by Kobal in her capacity as GAL in other cases, and summarized governing standards of law. Second Removal Petition, ¶¶ 1-214. Mother first asserted that Kobal's participation was unnecessary and that the trial court "never made the statutory determination of necessity prior to her appointment[.]" *Id*. ¶ 215. Second, Mother asserted that Kobal should be removed because of bias, prejudice, and unfairness. *Id*. ¶¶ 246-62. Third, Mother argued that Kobal should be removed for usurping the role of the judiciary, which Kobal ostensibly did by "unilaterally attempting to limit [Mother's] court-ordered custody times" and by "misrepresenting facts and evidence to the [c]ourt." *Id*. ¶ 256.

In the Amended Second Removal Petition, Mother added eight additional paragraphs pertaining to Mother's retention of Katie Maxwell, Esq., ostensibly "an expert in the field of custody litigation[.]" Amended Second Removal Petition, ¶ 264. Mother asked Attorney Maxwell to determine whether Kobal "breached the standard of care" and thereby caused Mother "to lose legal and physical custody of" Child. *Id*. Attorney Maxwell opined that Kobal "was negligent in her advisory and investigatory roles as GAL" and that such negligence was the direct and proximate cause of the loss of custody. *Id*. ¶ 266. The Amended Second Removal Petition also cited an expert report authored by Mother's long-term treating psychiatrist, Matthew A. Berger, M.D. Dr. Berger opined that Mother

did "not suffer from any psychiatric or cognitive impairment that would interfere with her ability to make informed decisions concerning healthcare for her and" Child. *Id*. ¶ 265. The amended petition noted that Attorney Maxwell and Dr. Berger's expert reports were the foundation of a lawsuit[6] filed against Kobal. *Id*. ¶ 268. Based on those two reports and the pending lawsuit, Mother contended that there was "no question that there presently exists bias, prejudice, and unfairness" by Kobal "rendering her completely unable to act impartially … in her capacity as GAL[,]" and that she should be removed for those reasons. *Id*. ¶ 269. Finally, Mother argued that since the First Removal Petition, "new events, facts, information[,] and circumstances have arisen that constitute a change in circumstances related to said Motion, further amplifying" the court's "duty to remove" Kobal. *Id*. ¶ 270.

Kobal moved to dismiss or strike the Second Removal Petition on res judicata grounds. Kobal's Motion to Dismiss and/or Strike Second Removal Petition, 2/2/2023, ¶ 21; *see also* Kobal's Brief in Support of Motion to Dismiss and/or Strike Second Removal Petition, 3/9/2023. Kobal later filed a separate petition for counsel fees. Kobal's Petition for Counsel Fees, 3/8/2023. Kobal's request for counsel fees focused on Mother; there was no request for counsel fees to be assessed against Campbell. *See id*. ¶¶ 17-23. Kobal also filed an answer to the Second Removal Petition. Kobal's Answer to Second Removal Petition, 3/9/2023. On April 4, 2023, the trial court issued an order scheduling oral argument for April 18, 2023, to determine if the Second Removal Petition was precluded under res judicata and/or collateral estoppel principles. Order, 4/4/2023.

---

[6] Mother filed a civil lawsuit against Kobal on the same day Mother filed the Amended Second Removal Petition. *See* 2023-CV-01573. Mother eventually moved to withdraw the complaint on March 25, 2025, approximately six weeks after we granted allocatur in this case. The trial court ordered the case closed on November 17, 2025.

At the oral argument, the trial court[7] indicated its intent to deny the Second Removal Petition as amended insofar as it alleged that Kobal's appointment was void ab initio because the court had not entered an order regarding the necessity to appoint a GAL. The court reasoned that the claim was "inaccurate in as much as both parties were represented in front of the master and both parties agreed to the appointment of the [GAL]." N.T., 4/18/2023, at 2-3. Next, the court determined that allegations of Kobal's bias were not new and were "all previously litigated" before Judge Munley when the First Removal Petition was denied. *Id*. at 3. The court also determined that Kobal had not "usurped the role of the judiciary." *Id*. at 3-4. However, because of Mother's pending civil suit against Kobal, the court decided to remove Kobal as GAL to avoid "an appearance of impropriety" and because the court did not want Kobal "to suffer any further with this case[.]" *Id*. at 4. Nonetheless, the court described the timing of the lawsuit as being "very suspect." *Id*. at 8.

Despite the court's intent to remove Kobal as GAL on alternative grounds, Campbell argued on behalf of Mother that he should be allowed to argue the merits of the three claims presented in the Second Removal Petition. *Id*. at 10-12. The court acknowledged that it had read Campbell's "voluminous filings" and asked what he would add to it. *Id*. at 21. Campbell responded that he did not believe the First Removal Petition had been fully adjudicated. *Id*. at 22. Father and Kobal's attorneys countered that Campbell was misrepresenting the record because the First Removal Petition had been fully adjudicated and ultimately denied. *Id*. at 24-26. The court agreed that the First Removal Petition had been fully litigated and that it was "bound by Judge Munley's ruling."

---

[7] Lackawanna County Court of Common Pleas Judge Julia K. Munley presided over most of the prior proceedings in this case. President Judge Trish Corbett was reassigned to this case on February 2, 2023 while the Second Removal Petition and the Amended Second Removal Petition were pending.

*Id.* at 27. Over Campbell's protestations, the court refused to hear further argument beyond what had already been submitted in the Second Removal Petition and related filings. *Id.* at 28.

Subsequent to these rulings on the record and after the parties discussed the appointment of a new GAL, Kobal's attorney brought to the court's attention her outstanding fee petition against Mother. *Id.* at 42. The court was not prepared to rule on the matter and asked for further briefing. *Id.* at 42-43. The court provided the same response when Father mentioned his own petition for counsel fees. *Id.* at 43. Campbell never responded on Mother's Behalf to the outstanding counsel fee petitions before, during, or immediately after the oral argument. At the same time, and consistent with the parties' filings at that point, there was no discussion at the April 18 oral argument that counsel fees were being sought from Campbell. At no point during the April 18 proceeding did the court hear testimony on the counsel fee claims.

Two days after the oral argument, Kobal filed a brief in support of her petition for counsel fees. Brief in Support of Petition for Counsel Fees, 4/20/2023. For the first time, Kobal argued that counsel fees should be assessed against both Mother **and** Campbell because their "conduct was arbitrary, vexatious, obdurate and in bad faith." *Id.* at 3. Kobal alleged her claim for counsel fees was based on purportedly "undisputed facts" pertaining to Mother and Campbell's "taking the completely false position that the June 13, 2022 Hearing was not a final adjudication" as a basis for arguing that the Second Removal Petition was not barred by res judicata and/or collateral estoppel. *Id.* at 4-6, ¶¶ 10-11. Kobal also alleged that Campbell repeatedly exhibited evidence of a personal vendetta against Kobal well beyond the confines of this case. *Id.* at 7-8.

By order dated May 5, 2023, the trial court denied the Second Removal Petition because it "failed to raise differing allegations of misconduct against [Kobal] from what

was previously raised and litigated in" the First Removal Petition.  Amended Order, 5/5/2023, ¶ 1.  Nonetheless, and consistent with its statements at the April 2023 oral argument, the court removed Kobal as GAL because of Mother's civil suit.  *Id*. ¶ 2.  The court also granted Father's petition for counsel fees, ordering Mother to compensate Father in the amount of $8,950.00.  *Id*. ¶ 3.  Likewise, the court granted Kobal's petition for counsel fees, ordering Mother to compensate Kobal in the amount of $10,482.40.  *Id*. ¶ 4.  The court also held Campbell in contempt and set conditions to purge the contempt order.  *Id*. ¶ 5.[8]  Order, 5/5/2023.  Neither the order nor the accompanying memorandum addressed Kobal's claim for Campbell to pay counsel fees.

The court explained that Father and Kobal were entitled to counsel fees pursuant to 23 Pa.C.S. § 5339.[9]  Memorandum, 5/5/2023, at 7.  The court determined that the Second Removal Petition

> was filed without legal merit as the allegations in [the] 262 paragraph [Second Removal Petition] predominantly focused on Kobal's conduct in previous cases and not the case at hand.  The facts which were raised regarding the custody case were previously litigated through a full evident[iary] hearing and denied by the Honorable Judge Munley.  [Mother]'s pursuit to remove the GAL without … legal merit has risen to the level of vexatious and repetitive.  Therefore, this [c]ourt [holds that Father and Kobal] shall be entitled to legal fees to be paid for by [Mother].

*Id*. at 7-8.  No additional rationale was given for the imposition of counsel fees beyond the vexatious and repetitive nature of the Second Removal Petition.

---

[8]  The contempt order was issued because Campbell had violated the Psychological Evaluation Order by releasing a sealed psychological evaluation to Attorney Maxwell.  *See* Memorandum and Order, 5/5/2023, at 8.

[9]  23 Pa.C.S. § 5339 ("Under this chapter, a court may award reasonable interim or final counsel fees, costs and expenses to a party if the court finds that the conduct of another party was obdurate, vexatious, repetitive or in bad faith.  This section may not apply if that party engaged the judicial process in good faith to protect the child from harm.").

On May 8, 2023, Kobal filed a motion for reconsideration of the May 5, 2023 order. Kobal's Motion for Reconsideration, 5/8/2023. Therein, Kobal requested that the court reconsider its failure to hold Campbell liable for the counsel fee award of $10,482.40. *Id.* ¶ 17. Father also filed a motion for reconsideration along similar grounds, asking the court to reconsider its failure to hold Campbell liable for the counsel fee award of $8,950.00. Father's Motion for Reconsideration, 5/8/2023, ¶ 38. The court denied both motions for reconsideration. Order, 5/8/2023 (Kobal); Order, 5/9/2023 (Father).

Campbell filed an appeal on behalf of Mother, and Father and Kobal each filed cross-appeals.[10] All of the appeals were consolidated in the Superior Court by order dated October 31, 2023. Mother's appeal was dismissed after Campbell failed to file a Brief on her behalf.[11] Father argued in his Rule 1925(b) Statement that the trial court had "abused its discretion and committed an error of law" by failing to impose counsel fees on Campbell for "relentless" pursuit of the Second Removal Petition despite being given notice by Father that the Second Removal Petition violated Pa.R.C.P. 1023.1(c)(1), (c)(2), and (c)(3). Father's Pa.R.A.P. 1925(b) Statement, ¶¶ 8-9. Kobal's Rule 1925 statement raised nearly identical issues. Kobal's Pa.R.A.P. 1925(b) Statement, ¶¶ 1-4. In her brief before the Superior Court, Kobal argued that the trial court "erred" by ordering Mother to pay Kobal's counsel fees "instead of" Campbell and his law firm. Kobal's Superior Court

---

[10] In Mother's Pa.R.A.P. 1925(b) statement, Campbell raised four issues challenging the trial court's imposition of counsel fees on Mother. Mother's Pa.R.A.P. 1925(b) statement, 6/26/2023, ¶¶ 4-7.

[11] *See* Order, 811 MDA 2023 / 884 MDA 2023 / 885 MDA 20233, 12/5/2023, at 1-2 ("This [c]ourt set forth a briefing schedule on October 31,2023, directing Counsel for [Mother] to file the first brief by December 4, 2023. The Order specifically stated that no extensions would be granted. Accordingly, the appeal at 811 MDA 2023 is **DISMISSED WITH PREJUDICE**."). In the same order, the Superior Court unconsolidated the appeals and removed the cross-appeal classifications of Father and Kobal's appeals at 884 MDA 2023 and 885 MDA 2023, respectively. *Id.* at 2.

Brief at 2. Kobal's four-page argument focused almost exclusively on our decision in *County of Fulton*. *Id*. at 18-22.

## Superior Court Decision

The Superior Court agreed with Father and Kobal that the trial court had abused its discretion by holding Mother solely responsible for Father and Kobal's counsel fees. *Lukasik v. Scotchlas*, Nos. 884 MDA 2023 & 885 MDA 2023, 2024 WL 1636597, at *4 (Pa. Super. April 16, 2024) (non-precedential decision). The court found this matter to be analogous to our decision in *County of Fulton*, stating that *County of Fulton* stands for the proposition "that in situations where counsel has engaged in dilatory, obdurate, vexatious, and bad-faith conduct, it would be unjust for a client to fully bear the costs[.]" *Id*. Because we sanctioned the attorney in *County of Fulton* for his dilatory, obdurate, and vexatious conduct, the Superior Court reasoned:

> Likewise, in the instant matter, we find that … Campbell engaged in dilatory, obdurate, vexatious, and bad-faith conduct by filing a 56-page, 262-paragraph second petition to remove Attorney Kobal as GAL on January 31, 2023, less than 9 months after the filing of Mother's first removal petition and while the underlying custody case was already in progress. The record reveals that this second petition had no basis in law or fact and raised no additional new claims, and was filed by … Campbell with full knowledge that Mother's first petition to remove the GAL was denied by the trial court following an extensive evidentiary hearing.

*Id.*[12]

On that basis, the Superior Court reversed "the trial court's May 5, 2023 amended order, in part, to the extent it direct[ed] Mother to bear full responsibility to pay $8,950.00 in counsel fees to Father and $10,482.40 in counsel fees to Attorney Kobal." *Id*. It also

---

[12] Although the Superior Court stated that the trial court had "authored a comprehensive [memorandum] in support of its May 5, 2023 order[,]" it did not address the trial court's failure to even mention Father and Kobal's claims to hold Campbell liable for their counsel fees. *Lukasik*, 2024 WL 1636597, at *2.

remanded to the trial court for further proceedings to determine "joint and several responsibility for these counsel fees during the period for which" Mother, Campbell, and the law firm "share responsibility for the misconduct." *Id*.

**Issue**

Campbell filed a timely petition for allowance of appeal, and we granted review of one question, which we phrased as follows:

> Whether the Superior Court erred in applying *County of Fulton* … to *sua sponte* find … Campbell's conduct was dilatory, obdurate, vexatious, and in bad faith and to remand for further proceedings to determine … Campbell['s] joint and several liability for attorney's fees the trial court imposed solely on their client.

*Lukasik v. Scotchlas*, 333 A.3d 1044 (Pa. 2025) (per curiam).

**Parties' Arguments**

Campbell acknowledges that counsel fees may be awarded against any participant in a civil action, but he maintains that a participant seeking counsel fees must meet a stringent requirement of establishing dilatory, obdurate, vexatious, or bad faith conduct, and that such an award is not simply the price of losing a legal dispute to the prevailing party. Campbell's Brief at 24-26 (citing, inter alia, *O'Connell v. O'Connell*, 597 A.2d 643, 647 (Pa. Super. 1991) (reversing award of counsel fees where the "record d[id] not support the stringent requirement that [the non-prevailing party's] behavior was dilatory, obdurate or vexatious … or that the action was arbitrary or in bad faith"). Campbell argues that to meet that stringent standard a hearing is typically required. *Id*. at 26-27.[13]

---

[13] Campell notes distinctions between counsel fee awards for dilatory, obdurate or vexatious conduct and sanctions for civil contempt. Campbell's Brief at 27-32. He maintains that sanctions for contempt may serve a remedial purpose in addition to vindicating the authority of the court, and that a finding of contempt requires a hearing at which it must be demonstrated that a court order was violated, with "all inferences, ambiguities or omissions construed in favor of the alleged contemnor." *Id*. at 31 (citing *County of Fulton*, 292 A.3d at 1054) (emphasis omitted).

Campbell observes that, in *County of Fulton*, our decision to award counsel fees against Fulton County's counsel, Attorney Carroll, followed an extensive evidentiary hearing conducted by a Special Master appointed by this Court. Based on her findings, the Special Master recommended holding Fulton County liable for counsel fees for contempt and provided alternative bases for the imposition of counsel fees under Section 2503 and Pa.R.A.P. 2744.[14] Campbell's Brief at 33 (citing *County of Fulton*, 292 A.3d at 1013-15). We agreed with most of the Special Master's findings and recommendations, but we held that the record also supported Attorney Carroll's culpability for counsel fees. In Campbell's view, we did so to "set an example" because Fulton County's counsel had engaged in relentlessly dilatory, obdurate, vexatious, and bad-faith conduct in addition to contributing to Fulton County's contempt. *Id*. (citing *County of Fulton*, 292 A.3d at 1018 ("In sum, we find that Attorney Carroll, both in tandem with and also independently of his clients, is guilty of relentlessly dilatory, obdurate, vexatious, and bad-faith conduct before this Court and the Special Master, especially, but not exclusively, during these sanction proceedings.")). Campbell believes *County of Fulton* stands for the proposition that

> so long as the parties enjoyed a fair opportunity for the matter to have been fully heard on the merits—including the presentation of evidence and testimony—a court may hold an attorney representing a client whose actions were held to be in contempt of a court order, jointly and severally liable with his client for any counsel fees awarded as a sanction for directly contributing to his client's conduct, sanctionable by Section 2503.

Campbell's Brief at 35.

Campbell contrasts Attorney Carroll's direct contribution to "sustained and deliberate" sanctionable conduct by Fulton County, established by an extensive

---

[14] Rule 2744 permits imposition of counsel fees by an appellate court as a sanction "if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." Pa.R.A.P. 2744.

evidentiary record including "robust procedural safeguards," with the Superior Court's identification of only one sanctionable act in this case—the filing of the Second Removal Petition. *Id*. at 38-39. Campbell asserts that to sanction him under the authority of *County of Fulton*, the Superior Court had to make prerequisite findings that there were due process safeguards, that Mother engaged in sustained and deliberate sanctionable conduct, and that Campbell contributed to the sanctionable conduct. *Id*. at 39.

Campbell emphasizes that this Court sat as the ultimate factfinder in *County of Fulton*, aided by the recommendations of the Special Master, in addressing the Secretary's application for sanctions and fees before this Court. *Id*. at 39 n.38. In the instant matter, by contrast, the Superior Court was not addressing sanctions in the first instance. *Id*. at 39-40. As such, Campbell argues that the Superior Court could only review the trial court's decision under a highly deferential abuse of discretion standard. *Id*. at 40. He contends that the Superior Court "failed to properly employ" that standard and essentially substituted its judgment for that of the trial court by ordering Campbell to pay counsel fees when the trial court had refused to do so. *Id*.

Campbell also observes that "there was no evidentiary hearing on the parties' respective Motions for Sanctions or to Hold Mother in Contempt" and that the April 18, 2023 proceeding, was an oral argument—erroneously called a hearing by the Superior Court—held solely for the purpose of addressing the motions to dismiss the Second Removal Petition. *Id*. He maintains that the order scheduling the oral argument "did not list any additional issues to be addressed during oral argument and no testimony was taken[.]" *Id*. at 41. Campbell argues that neither he nor Mother "were afforded … notice []or a fair opportunity to be heard during the eponymously named proceeding" and that Campbell "was refused any opportunity to provide substantive argument" about any of the topics discussed, including the sanctionable conduct. *Id*.

Campbell contends that because the trial court did not hold an evidentiary hearing, the intermediate court had no evidence before it of "sustained and deliberate" sanctionable conduct "throughout the proceedings." *Id*. at 46. He argues that the only admitted fact was that that the Second Removal Petition had been filed. *Id*. at 47. Campbell also argues that because he did not represent Mother during litigation of the First Removal Petition, his conduct cannot be interpreted as repetitive and that absent additional facts on the record, his filing of that petition could not have been deemed by the Superior Court to have been fraudulent, dishonest, lacking due diligence, or as having caused the delay of proceedings, as those allegations cannot be proven on the face of the petition. *Id*. at 47-48. Campbell states that the record is "devoid of any evidentiary facts" showing that he "directly contributed to dilatory, obdurate, vexatious or in bad faith" conduct engaged in by his client that had been sanctioned by the trial court. *Id*. at 48.[15]

Kobal argues that Campbell had both notice and an opportunity to be heard in the trial court. Kobal's Brief at 33. Regarding notice, she asserts that she sought compensation from both Mother and Campbell for counsel fees both before and after the trial court issued the counsel fee awards against Mother. *Id*. (citing Kobal's Brief in Support of Petition for Counsel Fees, 4/20/2023; Kobal's Motion for Reconsideration, 5/8/2023). She then raised the issue in her Rule 1925(b) concise statement and in her brief before the Superior Court. *Id*. at 34-35 (citing Kobal's Pa.R.A.P. 1925(b) Statement, ¶¶ 1-4; Kobal's Superior Court Brief).

Regarding an opportunity to be heard, Kobal essentially contends that Campbell failed to take advantage of opportunities to be heard after he was on notice of her request

---

[15] For the sake of completeness, we note that Campbell argues that the trial court's award of counsel fees against Mother was itself "an unconstitutional error[,]" Campbell's Brief at 49 (emphasis omitted), and that her due process rights were violated, *id*. at 50. However, because Campbell abandoned Mother's appeal, resulting in that appeal's dismissal with prejudice, we do not consider those arguments.

for counsel fees. First, she contends that Campbell never objected to the fee award in the trial court, and that he raised it for the first time in the Rule 1925(b) statement that he filed on Mother's behalf. *Id*. at 35 (citing Mother's Pa.R.A.P. 1925(b) Statement, 6/26/2023, ¶¶ 6-7). Kobal notes that Campbell never spoke up at the April 18, 2023 oral argument when counsel fees were discussed. She further observes:

> In the ensuing 17 days (almost three weeks) between the April 18, 2023 proceeding and the trial court's May 5, 2023 Memorandum and Order, Campbell was silent; he did not file an Answer to the Petition for Counsel Fees or an opposing brief. In the ensuing 28 days between the trial court's May 5, 2023 Memorandum and Order and [Mother]'s appeal, [he] did not seek reconsideration. [He] did not make or file an objection to Kobal's Motion for Reconsideration.

*Id*. at 37.

Kobal highlights that Campbell filed an appeal to contest the counsel fee award against Mother and that he abandoned all related claims when he failed to file a brief on Mother's behalf. *Id.* at 40. And although both Father and Kobal specifically sought counsel fees against Campbell in their appeals from the May 5, 2023 order, Campbell never filed an Appellee's brief in those appeals. *Id*. at 37. Because Campbell failed to avail himself of those opportunities to be heard both in the trial court and Superior Court, Kobal argues that "his failure to do so results in waiver" of the issue presented for our review. *Id*. at 38.

Alternatively, Kobal contends that the Superior Court did not err in applying *County of Fulton* to hold Campbell jointly and severally liable for the counsel fee award against Mother. *Id*. at 41. First, Kobal asserts that the Superior Court did not award counsel fees sua sponte as suggested by the questioned accepted for review; to the contrary, she alleges that the fees were awarded based on analogous circumstances in *County of Fulton*. *Id*. at 46. She further argues that a hearing on counsel fees was unnecessary because

> the record contains undisputed facts as to Campbell's conduct and the relative merits of [Mother]'s claims" that "clearly show Campbell's conduct was dilatory, obdurate, vexatious, and in bad faith under § 2503 and "repetitive" under § 5339; that he unreasonably pursued Kobal's removal as GAL; and that he unnecessarily delayed the underlying custody case.

*Id*. at 47.

Kobal maintains that Campbell was dilatory because, as a result of the meritless Second Removal Petition, Kobal was forced "to file answers, motions to strike and/or dismiss, motion for a protective order, petition for fees, supporting briefs, etc." *Id*. at 48. She argues his conduct was obdurate "in that he was stubbornly persistent in wrongdoing" despite being served notice under Rule 1023.1 that his filing was unethical. *Id*. (quotation marks omitted). In particular, Kobal argues that Campbell was persistent in maintaining that the First Removal Petition had not been fully litigated even after responses to the Second Removal Petition demonstrated otherwise. *Id*. at 49. Kobal contends that Campbell was vexatious insofar as he continued to allege Kobal's bias as GAL in the Second Removal Petition without a reasonable basis for doing so. *Id*. at 50. Such conduct was, in Kobal's view, "harassing and annoying." *Id*. at 52. Kobal believes this was particularly true considering Campbell's crusade against Kobal that predated this case, asserting that Campbell had a "relentless goal to remove Kobal" that was "focused on his own interests[.]" *Id*. at 53. Kobal argues such evidence showed bad faith because Campbell was "dishonest" in that his goal was not to represent Mother's interests so much as it was to remove Kobal, who Campbell treated as "his white whale." *Id*. at 54. She claims that Campbell's conduct was repetitive because Campbell filed the Second Removal Petition despite full litigation of the First Removal Petition, and because he continued to repeat allegations of Kobal's bias in response to her petition to dismiss the Second Removal Petition and in Mother's amended Second Removal Petition. *Id*. Kobal also faults Campbell for repeating those claims before this Court. *Id*. at 54-55. Kobal

also directs our attention to the fact that Campbell did not seek allowance of appeal from the portion of the Superior Court's order concerning Father's counsel fees. *Id*. at 56. She asserts that this is even more evidence of Campbell's personal vendetta against Kobal. *Id*. ("This whole case has been and is about nothing more than Campbell's goal to remove Kobal as a GAL altogether—even this appeal to this Court.").

For these reasons, Kobal maintains that the Superior Court acted "on the undisputed facts of record before it," and thus did not sua sponte "find that Campbell/his firm engaged in conduct warranting a fee award against them[.]" *Id*. Despite the lack of a hearing, however, Kobal maintains that the trial court had made several specific factual findings against Mother.[16] She further claims additional "findings" were made by the Superior Court based on the record,[17] and that "the fact that the trial court did not make any findings against Campbell/his firm did not preclude the Superior Court from doing so." *Id*. at 59. Kobal contends this is analogous to this Court's finding counsel liable for counsel fees in *County of Fulton* based on the record before us in that case. Consequently, Kobal maintains that the Superior Court did not err in applying *County of Fulton*. *Id*. at 59-60.[18]

---

[16] Those factual findings generally involved Mother's failure to raise new allegations of bias or claims with legal merit in the Second Removal Petition. They also included the extraordinary length of the Second Removal Petition, its focus on Kobal's conduct in different cases, the previous litigation of the claims in the First Removal Petition after a full evidentiary hearing, and the vexatious and repetitive nature of the Second Removal Petition. *See* Kobal's Brief at 57-58.

[17] Those appellate court findings included noting the extensive length of the Second Removal Petition, the nine-month delay between the First and Second Removal Petitions, the filing of the Second Removal Petition while custody proceedings were underway, the lack of a factual basis for the Second Removal Petition, its lack of new claims, and Campbell's "full knowledge" that the First Removal Petition had been fully litigated. *See* Kobal's Brief at 58-59.

[18] Father also filed a brief in this case and he agrees with the Superior Court's determination that Campbell should be responsible for a portion of the counsel fee award (continued…)

In his reply brief, Campbell argues that Kobal fails to grapple with the "central issue" here which is the Superior Court's decision to impose counsel fees on Campbell despite the trial court's failure to do so. Campbell's Reply Brief at 5. He maintains that he never had a fair opportunity to be heard in the absence of an evidentiary hearing addressing his culpability for counsel fees. *Id*. at 6 ("The real issue isn't the failures to respond on the record, but whether the Superior Court required an evidentiary hearing before its finding sanctionable conduct and imposing liability.") (emphasis and footnote omitted). Campbell emphasizes that neither the trial court nor the Superior Court found any specific admission of any fact alleged on the record[.]" *Id*. at 6 n.6. He contends the only undisputed fact of record is that the Second Removal Petition had been filed. *Id*. at 6, 9.

Campbell does not dispute the general proposition that in some circumstances an evidentiary hearing may not be required when based on undisputed facts of record, he asserts instead that no such record exists in this case. *Id*. at 7. Campbell argues that it

> is undisputed that [he] was neither offered, nor participated in, an evidentiary hearing regarding the conduct of himself or his client, Mother, regarding the Second [Removal Petition]. While it is true that the [t]rial [c]ourt conducted an "oral argument" on April 18, 2023, the purpose of that proceeding was limited only to … Kobal's and Father's respective Motions to Dismiss the Second [Removal Petition]. During that proceeding, no admissions (or failures to admit) were presented by … Kobal before the [t]rial [c]ourt regarding her Petition for Attorneys' Fees and no sworn testimony or evidence was presented whatsoever. What was presented was Father's oral motion to hold [Campbell] in contempt of a prior order regarding his dissemination of certain medical records to a retained expert, Katie Maxwell, Esquire. The entire relevant trial court record regarding sanctionable conduct by [Campbell] or Mother consists of the docket entries

against Mother. Father's Brief at 2. However, Campbell did not appeal from the Superior Court's order in Father's case and, thus, Father is not a party in the appeal presently before this Court. Consequently, we do not consider his arguments.

and the April 18, 2023 transcript. This absence of articulated specific facts is the exact reason the Superior Court erred in its decision as it could not substantiate its own assessment that the [t]rial [c]ourt had abused its discretion.

*Id*. at 8-9 (citations and footnotes omitted).

Campbell observes that the trial court "exercised its discretion to not award fees against" him, and that it did not find that he engaged in dilatory, vexatious, obdurate, or bad faith conduct. *Id*. at 10. Thus, the question before the Superior Court was whether that decision was an abuse of discretion. *Id*. Campell contends that sole undisputed fact—his filing of the Second Removal Petition—could not support a finding that the trial court had abused its discretion. *Id*. at 11. He argues that even if he acted with wrongful intent and had waived his challenge to the fees imposed by the trial court, "the Superior Court was still required to substantiate its reversal by reference" to the trial court record. Because his filing of the Second Removal Petition was the only undisputed fact of record, Campbell maintains that the Superior Court's decision cannot be affirmed because that fact alone "is wholly insufficient" to show that the trial court's decision was clearly erroneous. *Id.* Campbell notes that there was no record produced in the trial court that spoke to his specific conduct. *Id*. at 11 n.13.

Campbell also contends that at the time the Second Removal Motion was filed, "nothing had been scheduled on that case at all" and, therefore, "no custody hearings were disrupted, delayed or continued." *Id*. at 14. He further emphasizes that his conduct could not be deemed repetitive (even if Mother's litigation was) because Campbell did not file the First Removal Petition. *Id*. Campbell argues that assertions that his conduct was repetitive or disruptive of ongoing proceedings are clearly **disputed** facts of record. Likewise, he contends that, insofar as Kobal asserts that he acted to harass or annoy, or without due diligence, or that he acted dishonestly or with a purpose to defraud, such assertions are also disputed facts. *Id*. In this regard, Campbell argues that the Superior

Court's decision was not based on undisputed facts of record but based on its own judgment about disputed facts. *Id*. at 15. As such, Campbell claims that the Superior Court engaged in sua sponte "factfinding" that was a fundamental misapplication of the abuse of discretion standard it purported to apply. *Id*.

**Analysis**

Preliminarily, the question before this Court concerns the Superior Court's decision to hold Campbell jointly and severally liable for the trial court's award of Kobal's counsel fees awarded against Mother. Although the Superior Court's decision awarded counsel fees to both Kobal and Father in one opinion, Kobal and Father's appeals were not consolidated at the time of that decision and Campbell explicitly did not seek allocatur review of the Superior Court's decision in Father's appeal.[19] Thus, because it is not before us, our decision today leaves the Superior Court's order fully intact with respect to its finding that Campbell is jointly and severally liable with Mother for the $8,950.00 counsel fee awarded to Father.

One additional matter is easily resolved. In her briefing before the Superior Court, Kobal argued that Attorney Campbell's conduct was dilatory, obdurate, vexatious, and/or in bad faith and sanctionable pursuant to *County of Fulton*. Thus, the Superior Court did not make any determination sua sponte[20] under a strict definition of that term, as Kobal specifically requested the imposition of counsel fees against Campbell and had argued that *County of Fulton* supported the Superior Court's ability to impose them.

Although that aspect of the issue we accepted for review is easily resolved, the question remains whether the Superior Court erred in applying *County of Fulton* to

---

[19] *See* supra note 2.

[20] *See Sua Sponte*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("Without prompting or suggestion; on its own motion.").

reverse the trial court's decision to not hold Campbell responsible for the portion of those counsel fees awarded to Kobal under the applicable abuse-of-discretion standard. For the reasons that follow, we reverse the Superior Court's order as it applies to Kobal's counsel fees. *County of Fulton* provides neither controlling nor persuasive authority to permit an appellate court, applying abuse-of-discretion review, to reverse a trial court's refusal to impose counsel fees against an attorney. Moreover, the record before the trial court did not contain sufficient factual findings to support the Superior Court's reversal of the trial court's decision under that deferential standard of review.

Appellate courts are bound to review a trial court's award of counsel fees with deference, "limited solely to determining whether the trial court palpably abused its discretion[.]" *Thunberg v. Strause*, 682 A.2d 295, 299 (Pa. 1996). In Pennsylvania we apply the American Rule, which provides that each party is generally responsible for their own counsel fees. Under this system, "a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception." *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 482-83 (Pa. 2009). There are several statutes and rules that authorize counsel fee awards in different but sometimes overlapping contexts.

The Judicial Code provides broadly applicable statutory authority for recovery of "reasonable counsel fees" by "participants" under certain conditions. 42 Pa.C.S. § 2503. For instance, a participant is entitled to counsel fees "as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter[,]" *id*. § 2503(7), or "because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith[,]" *id*. § 2503(9). *See also id.* § 2503(6). Commensurate with the American Rule, this Court rejects the use of counsel fee awards to "penalize all those who do not prevail in an action." *Twp. of S. Strabane v. Piecknick*,

686 A.2d 1297, 1301 (Pa. 1996). An award of counsel fees under Section 2503 requires a "specific finding" by a trial court of "dilatory, obdurate or vexatious conduct[,]" and thus cannot be sustained merely because a participant's actions are distasteful. *Id.* (determining that affirming a trial court's finding of "contemptuous conduct" was reversible error where the record showed the conduct was no more than "a good faith misunderstanding and interpretation" of an "obscure" prior stipulation).

Recovery of counsel fees is also permitted by statute in custody matters. *See* 23 Pa.C.S. § 5339 ("Under this chapter, a court may award reasonable interim or final counsel fees, costs and expenses to a party if the court finds that the conduct of another party was obdurate, vexatious, repetitive or in bad faith."). Here, the trial court specifically awarded counsel fees payable by Mother to Kobal under Section 5339 due to Mother's filing of the Second Removal Petition. Memorandum, 5/5/2023, at 7-8 (awarding counsel fees under Section 5339 due to Mother's "vexatious and repetitive" conduct in pursuing "to remove the GAL without … legal merit").

An appellate court is authorized to impose "a reasonable counsel fee" if "it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." Pa.R.A.P. 2744. Rule 2744 is exclusive to appellate court proceedings; an appellate court has "no power under any statute or rule to award counsel fees" for conduct occurring before a lower court. *Gossman v. Lower Chanceford Twp. Bd. of Supervisors*, 469 A.2d 996, 999 (Pa. 1983); accord *Piecknick*, 686 A.2d at 1300 n.4.[21]

As is relevant to question before us, the trial court exercised its discretion in fashioning the award of counsel fees in two ways. First, it held Mother responsible for

---

[21] This rule is not unique to Pennsylvania*. See, e.g.*, *Boca Burger, Inc. v. Forum*, 912 So.2d 561, 569 (Fla. 2005) (stating "no authority exists for an appellate court's imposition of sanctions for conduct occurring in the trial court").

Kobal's counsel fees stemming from litigation of the Second Removal Petition. Second, the trial court denied Kobal's request to hold Campbell responsible for those same fees, although it was silent as to its rationale for doing so. Applying *County of Fulton*, the Superior Court held that the trial court abused its discretion by refusing to hold Campbell jointly and severally responsible for those fees and remanded the matter to the trial court to sort out Mother and Campbell's respective liability. Consequently, Mother's liability for counsel fees is not a matter presently before us beyond whether Campbell is jointly and severally liable for them.[22]

The trial court did not mention Campbell's conduct as a basis for awarding counsel fees yet, separately, the court held Campbell in contempt for a violation of the Psychological Evaluation Order. *See* Memorandum and Order, 5/5/2023, at 8. Thus, the trial court clearly distinguished between Mother and Campbell in issuing sanctions in the May 5, 2023 amended order. On one hand, it held Mother responsible for counsel fees, and on the other, it held Campbell in contempt for violating a court order.

The Superior Court acknowledged that the question before it concerned whether the trial court had abused its discretion in denying Kobal's request for the counsel fees award to be assessed against Campbell. *Lukasik*, 2024 WL 1636597, at *3. However,

---

[22] Before the Superior Court, Kobal specifically requested that Campbell be held **solely** responsible for the counsel fees awarded against Mother. Kobal's Superior Court Brief at 23. The Superior Court did not grant that relief and Kobal did not seek allocatur review of that aspect of the Superior Court's decision.

Although we conclude that Campbell cannot now challenge the trial court's counsel fee award against Mother given that the Superior Court dismissed those claims with prejudice when Campbell abandoned Mother's appeal, Campbell was nonetheless aggrieved by Superior Court's decision to hold him and his law firm jointly and severally liable, and this is Campbell's first opportunity to challenge that decision. Consequently, we focus solely on the Superior Court's extension of liability to Campbell assuming, as we must, that the predicate awards of counsel fees against Mother were valid.

the trial court never stated the reason why it had exercised its discretion in that fashion.[23] The Superior Court never grappled with this fact and instead followed Kobal's (and Father's) invitation to apply our decision in *County of Fulton* to hold Campbell responsible for the counsel fees awarded against Mother. Thus, we first consider whether our decision in *County of Fulton* supports the Superior Court's ruling.

In *County of Fulton*, Fulton County filed a Petition for Review in the Commonwealth Court challenging the Secretary's authority to decertify the county's voting equipment. *County of Fulton*, 292 A.3d at 978. The Secretary decertified certain voting machines held by Fulton County after the county had compromised the integrity of voting machines by permitting a third party to conduct a "probing inspection" of the machines' software and stored data. *Id*. During that litigation, the Commonwealth Court denied the Secretary's request for a protective order to bar Fulton County from allowing yet another third party to inspect the at-issue equipment. *Id*. The Secretary appealed, at which point we

---

[23] It is not even clear if the trial court denied the claim on its merits, as it is possible that it believed that Kobal had waived the claim when it issued its May 5, 2023 order, because Kobal's initial petition for counsel fees targeted Mother and made no mention of Campbell's conduct as her counsel. *See* Kobal's Petition for Counsel Fees, 3/8/2023. Kobal's request to hold Campbell responsible for counsel fees appeared for the first time in Kobal's brief in support of that petition and was then repeated in her motion for reconsideration. *See* Kobal's Brief in Support of Petition for Counsel Fees, 4/20/2023; Kobal's Motion for Reconsideration, 5/8/2023.

To be fair to the Superior Court, Campbell did not challenge in the Superior Court whether the issue had been preserved by Kobal in the trial court because he did not file an appellee's brief on Mother's behalf. However, we note that under the peculiar posture of this case, a conflict of interest arose because the relief sought by Father and Kobal shifted culpability for the existing fee award from Mother to Campbell and his firm. It would have been detrimental to Mother's pecuniary interests, but beneficial to Campbell's, for Campbell to contest the fee shifting claims in his capacity as Mother's counsel. Nonetheless, if Kobal's claim targeting Campbell was waived before the trial court, there could be no abuse its discretion by the trial court in denying it. However, we can assume for the purpose of this appeal that the trial court had the opportunity to consider the claim given that it denied Kobal's Motion for Reconsideration, which solely concerned shifting responsibility for the Kobal's counsel fees to Campbell.

"entered a temporary order … to prevent the inspection and to preserve the *status quo* during our review of the Secretary's appeal." *Id*. at 979. Before we could decide the matter, Fulton County defied our order by permitting yet another third party to inspect the voting equipment. *Id*. Consequently, the Secretary sought an order to hold Fulton County in contempt and for sanctions. *Id*. To aid in our resolution of the Secretary's application, we appointed President Judge Cohn Jubelirer of the Commonwealth Court as a Special Master "to make an evidentiary record and to provide proposed findings of fact, conclusions of law, and sanctions (if warranted)[.]" *Id*. President Judge Cohn Jubelirer recommended sanctions be imposed against Fulton County but did not recommend imposition of sanctions on Fulton County's attorney, Thomas Carroll. *Id*.

We closely reviewed the Special Master's recommendation and determined that "Fulton County and its various attorneys[,]" including Attorney Carroll in particular, had "engaged in a sustained, deliberate pattern of dilatory, obdurate, and vexatious conduct" and had "acted in bad faith **throughout the**[] **sanction proceedings**." *Id*. (emphasis added). We described that pattern and bad faith conduct in excruciating detail. *Id*. at 979-1003. This Court then adopted the Special Master's recommendation to hold Fulton County in contempt for "deliberately, willfully, and wrongfully" defying this court's temporary order to prevent any further inspection of the voting equipment. *Id*. at 1010. We then turned to determining the appropriate sanctions. *Id*. We accepted the recommendation to impose on Fulton County "counsel fees and costs incurred" by the Secretary "from the effective inception of the underlying protective order litigation[.]" *Id*. at 1011. We also accepted the Special Master's recommendation to order impoundment of the voting machines to prevent Fulton County from further compromising their integrity and its recommendation not to dismiss its Petition for Review as a sanction for its conduct. *Id*. at 1011-12. However, we declined to accept the Special Master's recommendation to

order the Commonwealth Court to construe any fact relating to the inspection of the voting equipment in the Secretary's favor, noting that we were "reluctant to direct the fact-finder in the underlying litigation to resolve factual disputes in any particular way for fear of intruding unnecessarily upon that court's discretion." *Id*. at 1013.

Eventually we addressed Attorney Carroll's behavior in particular. *Id*. at 1015-18. We first noted that we would not hold Attorney Carroll responsible for Fulton County's contempt, even though the county's "violation occurred squarely during his watch[.]" *Id*. at 1015.[24] However, we noted that once the Secretary filed for sanctions, Attorney Carroll must have been aware of "the gravity of the [c]ounty's behavior as well as his own potential exposure." *Id*. Despite that awareness, we found that "Attorney Carroll incessantly transgressed the bounds of zealous but ethical advocacy" before the Special Master and this Court. *Id*. We explained those numerous transgressions as follows.

First, we observed that Attorney Carroll "serially raised the same arguments before both the Special Master and directly to this Court, long after it was clear that neither would grant the relief he sought. *Id*. Second, despite granting Fulton County "multiple extensions to facilitate" its right to raise objections to the Secretary's discovery requests before the Special Master, Attorney Carrol "repeatedly tied up the Special Master, this Court, and the parties with prosaic eleventh-hour filings that drew resources and attention away from these and other proceedings." *Id*.

Third, we chastised Attorney Carroll's "transparent efforts to delay the hearing" before the Special Master. *Id*. Those efforts included a delay for Attorney Carroll's vacation plans which, once accommodated, was followed by a request to delay the hearing to accommodate one of the election board commissioners' vacation plans on the

---

[24] We explained that Fulton County officials, two of three of Fulton County's Board of Elections commissioners in particular, were primarily responsible for the violation of our temporary order. *See County of Fulton*, 292 A.3d at 1014.

eve of the rescheduled hearing.[25]  *Id*.  Attorney Carroll also "subvert[ed]" already-delayed depositions by filing a "a lengthy, but by then cookie-cutter brief" repeating already-rejected arguments to discovery that he had previously made on the county's behalf.  *Id*. at 1015-16.  More significantly, we observed that Attorney Carrol sought to delay the hearing because the county election officials scheduled to testify ostensibly had to address a breakdown in Pennsylvania's Statewide Uniform Registry of Electors, but when Attorney Carroll raised the claim it was already clear the problem had been fully resolved. *Id*. at 1016 ("Attorney Carroll either failed to figure this out for himself or knowingly used a specious claim as a pretext to further jam up these proceedings.").

Fourth, Attorney Carroll failed to timely notify one of the three election board commissioners of her obligation to appear for the depositions and hearing.  She just happened to be the same commissioner who had persistently refused to play along with the Fulton County's "efforts to investigate the 2020 general election" and who had been willing  to testify fully to various matters as to which [the other commissioners] ultimately invoked their Fifth Amendment rights against self-incrimination" with questionable justification.  *Id*.  Attorney Carroll's misconduct in that regard caused the proceedings before the Special Master to last "considerably longer" than should have otherwise been required. *Id*.

Fifth, we cited Attorney Carroll's conduct at the hearings.  Our review of the transcript showed that he "frequently derailed and delayed the proceedings through a combination of dubious objections, lines of questioning on irrelevant subjects, and legal digressions and conspiratorial hypotheses with little discernible bearing upon the matter at hand." *Id*. We also found credible "assertions that Attorney Carroll was taking dictation

---

[25]  Attorney Carroll subsequently argued that the commissioner could not appear at the very same hearing due to his election duties.  *County of Fulton*, 292 A.3d at 1016.

from Attorney [Stefanie] Lambert for substantial periods of the hearing" as "an *ad hoc* work-around to avoid the intended limiting effect of the Special Master's denial of *pro hac vice* admission to Attorney Lambert[.]" *Id*. at 1017. Furthermore, in seeking pro hac vice admission to Attorney Lambert, Attorney Carroll had failed to acknowledge sanctions and disciplinary actions against her in Michigan. *Id*.

Finally, we observed an "unmistakable pattern" of sanctionable conduct before this Court, as Attorney Carroll "repeatedly failed to acknowledge [our] rules, orders, and directions in matters both procedural and substantive." *Id*. Of many transgressions, Attorney Carroll "brazenly misled this Court" by implying that he had insufficient time "come up to speed on the case" despite having "actively engaged in the underlying litigation one month earlier." *Id*. at 1017-18.

In sum, we found that "Attorney Carroll, both in tandem with and also independently of his clients, [was] guilty of relentlessly dilatory, obdurate, vexatious, and bad-faith conduct before this Court and the Special Master, especially, but not exclusively, during these sanction proceedings." *Id*. at 1018. Consequently, we determined **in the first instance** that "it would be inequitable that the County alone should bear the Secretary's costs" and so we sanctioned him "in the form of joint and several responsibility for the Secretary's counsel fees during the period for which he shares responsibility for the misconduct." *Id*. We then returned the matter to the Special Master for "findings and recommended fee awards along with an accounting of all relevant data and calculations employed in the task[.]" *Id*. at 1021.

*County of Fulton* is easily distinguishable. To be clear, *County of Fulton* concerned a contempt proceeding commenced by this Court to determine if Fulton County had violated our order to preserve the status quo during our review of the Secretary's appeal and, if so, what sanctions would be appropriate. This Court sanctioned Attorney Carroll

with counsel fees as a result of the manner in which he conducted his defense of Fulton County at those proceedings before the Special Master.

The contrast between this Court's exhaustive accounting of Attorney Carroll's sanctionable conduct in *County of Fulton* (distinct from the sanctionable conduct of his client for violating our order) and the Superior Court's identification of Campbell's sanctionable conduct in this case could not be starker. Here, with minimal discussion or analysis, the Superior Court found that Campbell "engaged in dilatory, obdurate, vexatious, and bad-faith conduct" solely because he filed the Second Removal Petition on Mother's behalf. Campbell's filing of that petition bears little resemblance to the scope and scale of the dilatory, obdurate, vexatious, and bad-faith conduct engaged in by Attorney Carroll in *County of Fulton*.

More importantly, *County of Fulton* is inapplicable to appellate review of a decision to grant or deny a counsel fee award because it did not involve abuse-of-discretion review. In *County of Fulton*, we asked the Special Master to provide proposed factual findings and conclusions of law regarding Fulton County's violation of **our order** during the Secretary's appeal **before this Court**, retaining full discretion to accept or reject the Special Master's factual and legal recommendations. Our relationship to the Special Master in *County of Fulton* was wholly unlike the relationship between a trial court and an appellate court when the latter reviews the former for an abuse of discretion.

As then-Justice Baer explained more than a decade ago, "[w]hen a court seeks to engage in fact-finding, it employs a special master" whose function "is to gather necessary factual information, consider pertinent legal questions, and provide the court with recommendations." *In re Thirty-Fifth Statewide Investigating Grand Jury*, 112 A.3d 624, 633 (Pa. 2015) (Baer, J., concurring). "Special masters operate **as an arm of the court**,

investigating facts on behalf of the court and communicating with it to keep it apprised of its findings[.]" *Id*. at 633-34 (emphasis added).

We recently utilized a Special Master to aid this Court in fashioning a congressional redistricting plan in *Carter v. Chapman*, 270 A.3d 444 (Pa. 2022). In *Carter*, we assumed plenary jurisdiction under our extraordinary jurisdiction powers after the legislative and executive branches failed to agree on a congressional redistricting plan following our decision in *League of Women Voters of Pennsylvania v. Commonwealth*, 178 A.3d 737, 823 (Pa. 2018).[26] We "directed the Special Master to file in this Court … a report containing proposed findings of fact and conclusions of law supporting her recommendation of a redistricting plan[.]" *Carter*, 270 A.3d at 453-54. We noted that although "the Special Master provided her recommendation of a congressional district plan," we were "mindful that this Court obtained original jurisdiction over this litigation when we granted the … Application for Extraordinary Relief[.]" *Id*. at 454. Thus, "our scope of review" of the Special Master's factual findings and conclusions of law of the various redistricting plans it had considered was conducted "de novo."[27] *Id*. Ultimately, in *Carter*, we rejected the Special Master's redistricting plan recommendation and adopted a plan that it had not recommended. *Id*. at 458-64.

Similarly, in *County of Fulton*, we did not engage in abuse-of-discretion review after we appointed the Special Master to provide proposed findings of fact and conclusions of law as an arm of this Court. Instead, we conducted de novo review of those

---

[26] In *League of Women Voters*, we held that the Pennsylvania Congressional Redistricting Act of 2011 violated the Free and Equal Elections Clause of the Pennsylvania Constitution. *League of Women Voters*, 178 A.3d at 741.

[27] It is axiomatic that "[w]hen a court engages in de novo review of a legal issue, it makes an independent determination without deference to any earlier analysis about the matter. It is treated as if no previous decision had been made: there is no presumption of the correctness or validity of any prior finding, recommendation, or conclusion." *De Novo*, BLACK'S LAW DICTIONARY (12th ed. 2024).

recommendations. Thus, we decided to hold Attorney Carroll responsible for counsel fees in the first instance with no presumption of validity or deference owed to the Special Master's factual findings or recommendation to the contrary. Moreover, those counsel fees were awarded for violations of this Court's order and for Attorney Carroll's conduct during proceedings held before the Special Master to adjudicate sanctions for those violations, not for conduct that occurred before the Commonwealth Court under its original jurisdiction.

We reiterate that our appellate courts possess no authority to award counsel fees in the first instance for conduct that occurs by parties and attorneys at trial. *See Piecknick*, 686 A.2d at 1300 n.4. Appellate courts may only review a trial court's award (or refusal to award) counsel fees for abuse of discretion. *In re Doyle*, 304 A.3d 1091, 1115 (Pa. 2023) ("Our review of a lower court's order awarding counsel fees involves determining whether the court 'palpably abused its discretion' in making such an award.") (quoting *Thunberg v. Strause*, 682 A.2d 295, 299 (Pa. 1996)). *County of Fulton* has no precedential value when an appellate court reviews a trial court's award (or refusal to award) counsel fees as a sanction for conduct that occurs exclusively within the trial court's jurisdiction. Consequently, we hold that the Superior Court erred by relying on *County of Fulton* to inform its application of the abuse-of-discretion standard to the trial court's refusal to award counsel fees against Campbell. *County of Fulton* is inapposite for that purpose.

The Superior Court did not provide any alternative basis for its determination that the trial court had abused its discretion by failing to hold Campbell jointly and severally liable for counsel fees. It reversed the trial court solely based on its erroneous reliance on or by analogy to our decision in *County of Fulton*. Regardless, there were simply no relevant factual findings by the trial court regarding Campbell's conduct that support the

reversal of its decision under abuse-of-discretion review. The April 2023 oral argument was held solely to determine whether to dismiss the Second Removal Petition. The matter of counsel fees was only briefly discussed at the oral argument and the counsel fee claims before the court at that time were focused on Mother, not Campbell.

The Superior Court's determination that there was "an extensive evidentiary hearing" regarding whether Campbell filed the Second Removal Petition "with full knowledge" that the First Removal Petition had fully decided the matter is not supported by the record. *Lukasik*, 2024 WL 1636597, at *4. The trial court never held an evidentiary hearing on counsel fees at all, much less to establish specific facts regarding Campbell's conduct.[28] Furthermore, the trial court did not state any facts regarding Campbell's conduct in its opinion.

Thus, assuming for the purposes of this appeal that Mother's filing of the Second Removal Petition was sanctionable on its face without additional factfinding by the trial court,[29] there was an insufficient record created in the trial court upon which the Superior Court could have relied upon to hold that the award of counsel fees against Mother but not against Campbell was an abuse of discretion.[30] Consequently, we reverse the

---

[28] The Superior Court generally requires a hearing to justify the imposition of counsel fees unless the pertinent facts are undisputed. *See Wood*, 827 A.2d at 1207 ("Classically, in considering a motion to award counsel fees under section 2503, an evidentiary hearing is generally required."). There is no evidence in the record that Campbell has ever conceded that his conduct in filing the Second Removal Petition was dilatory, obdurate, vexatious, or in bad-faith as would be required to hold him liable for counsel fees.

[29] That question is also not before us today. Our review concerns the Superior Court's decision to hold Campbell jointly and severally liable for the counsel fees awarded against Mother, and not whether the award against Mother itself was supported by the trial court record. For that reason, we offer no opinion as to whether the trial court abused its discretion in awarding of counsel fees against Mother.

[30] While our holding today concerns the Superior Court's misapplication of the abuse-of-discretion standard, we acknowledge that Campbell's due process concerns were also implicated by its decision. Due process requires both notice and an opportunity to be (continued…)

decision of the Superior Court as it applies to Kobal's appeal. As discussed above, because Campbell did not seek our review of the Superior Court's decision with respect to Father's appeal, we leave that aspect of the Superior Court's order intact.

**Conclusion**

In *County of Fulton*, we sat as factfinder and held Fulton County's counsel jointly and severally liable for counsel fees due to his own dilatory, obdurate, vexatious, and bad-faith conduct during an appeal and related sanctions proceedings before this Court. Thus, the Superior Court in this case erred by relying on *County of Fulton* to hold counsel jointly and severally liable for counsel fees regarding sanctionable conduct that occurred exclusively within the trial court. As there was no other basis upon which the Superior Court could have determined that the trial court abused its discretion in holding Mother solely responsible for Kobal's counsel fees, we reverse that aspect of the Superior Court's order.

Chief Justice Todd and Justices Dougherty, Wecht, Mundy, Brobson and McCaffery join the opinion.

---

heard in a meaningful time and in a meaningful manner before a deprivation of property occurs. *See Washington v. PA Dep't of Corr.*, 306 A.3d 263, 285 (Pa. 2023). While Campbell certainly became aware at some point that Kobal was seeking to have counsel fees awarded against him, no hearing was conducted to determine whether his conduct in filing the Second Removal Petition (independent from Mother) was sanctionable. Thus, Campbell had no meaningful opportunity to be heard. Moreover, and without implying he had burden to do so, we note that once the trial court denied Kobal's motion for reconsideration, Campbell had no reason to demand a hearing regarding his own culpability having already prevailed on that question.